UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HARBORVIEW CAPITAL PARTNERS, LLC,** <br><br> **Plaintiff,** <br><br> v. <br><br> **CROSS RIVER BANK,** <br><br> **Defendant.** | Civ. No. 2:21-15146-KM-ESK <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    This matter comes before the court on the motion of plaintiff Harborview Capital Partners, LLC ("Harborview") for reconsideration (DE 49)[1] of the court's opinion and order granting the motion of Cross River Bank ("Cross River") to dismiss the complaint for failure to state a claim (DE 44). *See Harborview Cap. Partners, LLC v. Cross River Bank*, No. CV 2:21-15146-KM-ESK, 2022 WL 1224960 (D.N.J. Apr. 26, 2022) ("Op."). Harborview seeks reconsideration of the court's dismissal of its claims for violation of provisions of New Jersey's Uniform Commercial Code (UCC), N.J. Stat. Ann. §§ 12A:4A-201, 202, and 203, and its related common law claims of negligent misrepresentation, breach of contract, and promissory estoppel.

    For the reasons set forth below, Harborview's motion for reconsideration is **DENIED**. As I previously ordered, Harborview's motion for leave to amend the complaint is due within 14 days of the date of this opinion. (DE 52.)

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Compl. = Harborview's Complaint (DE 1)

    Mot. = Harborview's Brief in Support of Motion for Reconsideration (DE 49)

I. **BACKGROUND**

A detailed factual background can be found in my previous opinion. To summarize, Harborview is a real estate company that maintained bank accounts at Cross River. (Compl. ¶¶ 11, 71.) When Harborview opened its accounts, it completed Cross River's Account Opening Data Entry Forms, in which Harborview noted its specific trade area was USA, checked "no" with regards to business conducted of a foreign nature, and stated that its foreign wire activity was zero. (*Id.* ¶¶ 16, 18; DE 1-1; DE 1-2.) The Account Opening Data Entry Forms also named the authorized signers of the accounts, one of whom was Harborview's accounting manager. (Compl. ¶¶ 17–18, 30; DE 1-1; DE 1-2.)

From August 16 to August 27, 2018, unbeknownst to Harborview at the time, a hacker used Harborview's CEO's email account to direct the accounting manager to wire funds internationally to Hang Seng Bank in Hong Kong. (Compl. ¶¶ 28, 32.) In response, the accounting manager completed four separate wire transfer forms on August 16, 17, 24, and 27, 2018, and sent such forms to Cross River. (*Id.* ¶¶ 30–31.) Upon receipt of each form, Cross River contacted the accounting manager to confirm the details of the transaction. (*Id.* ¶ 33.) The initial wire transfer of August 16, 2018, failed to properly process—a fact which Cross River became aware of on August 17 but failed to share with Harborview until August 21. (*Id.* ¶¶ 37–39.) Cross River successfully processed the three remaining wire transfers on August 17, 24, and 27, 2018, totaling $1,375,000. (*Id.* ¶ 41.)

Harborview filed its complaint against Cross River on August 11, 2021, which contained four counts: violation of N.J. Stat. Ann. §§ 12:4A-201, 202, and 203 (Article 4A of the Uniform Code as adopted by New Jersey "Article 4A") (Count I); negligent misrepresentation (Count II); breach of contract (Count III); and promissory estoppel (Count IV). Cross River moved to dismiss all counts for failure to state a claim pursuant to Rule 12(b)(6). In an opinion and order dated April 26, 2022, I granted Cross River's motion to dismiss without

prejudice to the submission within 30 days of a properly supported motion to amend the complaint. (DE 44; DE 45.) On May 17, 2022, Harborview moved for reconsideration of that opinion, which is now ripe for decision. (DE 49.)

## II. LEGAL STANDARD

"Reconsideration is an 'extraordinary remedy,' to be granted 'sparingly.'" *United States v. Coburn*, No. 19-00120, 2022 WL 874458, at *2 (D.N.J. Mar. 23, 2022) (quoting *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)). "Generally, reconsideration is granted in three scenarios: (1) 'an intervening change in the controlling law;' (2) 'the availability of new evidence that was not available' at the time of the court's decision; and (3) 'the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Id.* (quoting *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). The moving party bears the burden of demonstrating that one of these scenarios applies. *See id.*

In this district, motions for reconsideration are governed by Local Civil Rule 7.1(i). That rule provides that a party may move for reconsideration within 14 days of an entry of order or judgment on the original motion. *See* L. Civ. R. 7.1(i). It also requires that a party file a brief with their motion for reconsideration "setting forth concisely the matter or controlling decisions which the party believes the Judge has overlooked." *See id.*

"The word 'overlooked' is the operative term in the Rule." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001). "A motion that merely raises a disagreement with the Court's initial decision is not an appropriate reconsideration motion, but should be dealt with in the normal appellate process." *Church & Dwight Co. v. Abbott Labs.*, 545 F. Supp. 2d 447, 450 (D.N.J. 2008). Put differently, "[a] motion for reconsideration is improper when it is used 'to ask the Court to rethink what it has already thought through—rightly or wrongly.'" *Oritani Savs. & Loan Ass'n v. Fid. & Deposit Co. of Md.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (quoting *Above the Belt v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D. Va. 1983)). In addition, a

motion for reconsideration is not "an opportunity for a litigant to raise new arguments or present evidence that could have been raised prior to the initial judgment." *Red Roof Franchising v. AA Hospitality Northshore,* 937 F. Supp. 2d 537, 543 (D.N.J. 2013). The purpose of a motion for reconsideration is to allow counsel to draw the court's attention to issues that "may have been overlooked by the court, not those which were overlooked by counsel." *See Estate of Harrison v. Trump Plaza Hotel & Casino*, No. 12-6683, 2015 WL 3754996, at *2 (D.N.J. June 16, 2015) (quoting *Polizzi Meats, Inc. v. Aetna Life & Cas. Co.,* 931 F. Supp. 328, 339 (D.N.J. 1996)).

### III. DISCUSSION

#### A. Reconsideration of Dismissed UCC Claims

Harborview asks that I reconsider my dismissal of its claims for violation of N.J. Stat. Ann. §§ 12A:4A-201, 202, and 203. I briefly recap my prior analysis of this issue. Pursuant to Article 4A, a payment order[2]—*i.e.*, the wire transfers at issue in this case—can be deemed authorized or effective through two alternative means in §§ 12A:4A-202(1) and (2). I found that the requirements of § 12A:4A-202(1) were met—that "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." Although no court in this District had analyzed what constituted an "authorized order," I found two out-of-jurisdiction opinions instructive: *Wellton Int'l Express v. Bank of China (Hong Kong)*, No. 19-CV-6834 (JPO), 2020 WL 1659889 (S.D.N.Y. Apr. 3, 2020) and *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972 (W.D. Tenn. 2020). Applying the principles in those cases, I concluded that Harborview authorized the payment orders because they were ordered by Harborview's accounting manager who was indisputably authorized, as

---

[2] A "payment order" is the "instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary." N.J. Stat. Ann. § 12A:4A-103(1)(a).

4

Harborview's agent and authorized signatory on the account, to sign and send the wire transfers. *See Op.*, 2022 WL 1224960, at *5–*7.

I rejected Harborview's argument that Cross River was required, in addition to Section 202(1), "to comply with the commercially reasonable security procedures and good faith requirements of Section 202(2)." *Id.* at *7. I explained that, based on New Jersey Supreme Court precedent[3] and a reading of Article 4A's provisions:

> whether a payment order is authorized is a threshold inquiry; if the order was authorized in fact by the person who is the designated signatory for the customer, the outcome does not thereafter depend on whether the bank also verified the payment order pursuant to commercially reasonable procedures. There is no provision under Article 4A providing that a payment order authorized pursuant to Section 202(1) may nevertheless not be effective or enforceable.

*Id.* at *8. Therefore, I dismissed Count I of Harborview's complaint for violation of N.J. Stat. Ann. §§ 12:4A-201, 202, and 203. *Id.* at *9.

First, Harborview argues that the court erred when it found that the wire transfers were "authorized." (Mot. p. 2.) Harborview directs the court to the following facts that it believes, when taken as true and in the light most favorable to plaintiff, support a claim for relief. When Cross River approached Harborview to request that it open a bank account, it assured Harborview that its money would be secure. (*Id.* at 2–3.) To open the accounts, Cross River required Harborview to complete the Account Opening Data Entry Forms explaining the nature of its business and banking needs. (*Id.* at 3.) In those forms, Harborview provided Cross River with information on its foreign wire and business activities. (*Id.*) Cross River obtained this information to familiarize itself with the nature of Harborview's business. (*Id.*) Prior to the wire transfers at issue, Harborview made over 1,100 wire transfers from its Cross River accounts, none of which were foreign. (*Id.*)

---

[3]  *See ADS Assocs. Grp., Inc. v. Oritani Sav. Bank*, 99 A.3d 345 (N.J. 2014).

According to Harborview, Cross River's inquiry into the nature of its business via the Account Opening Data Entry Forms raises a "reasonable inference" that "Cross River would utilize this information to institute and enforce security policies and procedures which would protect Harborview's money as promised." (*Id.*) In addition, Harborview argues that the allegations in the complaint and the information in the Account Opening Data Entry Forms do not support that the accounting manager was authorized to make a foreign wire transfer. (*Id.* at 4.) To the contrary, Harborview asserts that the accounting manager could conduct only domestic wire transfers. (*Id.*)

Harborview also reminds the court that the initial wire transfer of August 16 failed to process multiple times, a fact Cross River first became aware of on August 17 but failed to disclose to Harborview until August 21. (*Id.*) Therefore, according to Harborview, "the wire transfers to the bank in Hong Kong would not have been made but for Cross River's failure to timely notify Harborview of the failed August 16 transfer." (*Id.* at 5.)

A motion for reconsideration "should be granted only where facts or controlling legal authority were presented to but overlooked by the District Court." *Mauro v. New Jersey Supreme Ct.*, 238 F. App'x 791, 793 (3d Cir. 2007). I already considered the above facts in my previous opinion. *See Op.*, 2022 WL 1224960, at *1–*2. And, based on the facts and pursuant to the precedents, I concluded that Harborview's accounting manager was "indisputably authorized" to make the wire transfers. *See id.* at *7. Therefore, I will not grant Harborview's motion for reconsideration on this basis.

Second, Harborview argues that I wrongly decided that the Account Opening Data Entry Forms could not override an instruction provided by the accounting manager because I did not cite to any support for my conclusion. (Mot. p. 4.) For that reason, Harborview asserts that a trier of fact must determine whether Cross River could rely on the accounting manager's authorization when it conflicted with the Account Opening Data Entry Form and Harborview's prior practices and banking history. (*Id.*) Harborview's

6

position is merely a disagreement with my opinion, which is not appropriate for a motion for reconsideration. *See Church & Dwight Co.*, 545 F. Supp. 2d at 450.

Third, Harborview takes issue with my reliance on two opinions, *Wellton Int'l Express*, 2020 WL 1659889 and *Berry*, 507 F. Supp. 3d 972, because they are from outside of this jurisdiction and, according to Harborview, are distinguishable from this action. Instead, Harborview insists that I rely on *Patco Const. Co., Inc. v. People's United Bank*, 684 F.3d 197 (1st Cir. 2012). (Mot. pp. 5–7.)

My reliance on *Wellton* and *Berry* is explained in detail in my prior opinion. *See Op.*, 2022 WL 1224960, at *5–*7. Harborview does not cite to any newly decided case that would alter my opinion or point to a clear error of fact or law. Harborview is merely asking me to rethink something I have already thought through, which is not appropriate for a motion for reconsideration. *Oritani Sav. & Loan Ass'n*, 744 F. Supp. at 1314. In any event, Harborview's reliance on *Patco* is unavailing.

In *Patco*, unknown third parties accessed the plaintiff-company's online banking account using an employee's credentials and, over the course of several days, completed a series of online transfers from the company's bank account. 684 F.3d at 204. The transactions exhibited unusual characteristics compared to the company's typical online-banking activities, and the bank's security feature generated high-risk scores for the transactions. Nevertheless, the bank processed and paid the transactions without conducting manual reviews to determine their legitimacy or to notify the company. *Id.* at 204–05. During that time, portions of the illicit transfers were returned to the bank because the receiving account numbers were invalid. *Id.* at 205. At that point, the bank sent limited "return" notices via U.S. mail to the company, which it received six days after the fraudulent transfers began. *Id.* The company then informed the bank that it did not authorize those transactions. *Id.* That same day, the third parties attempted to complete another fraudulent transaction,

which the bank approved despite the company's warning. *Id.* The bank was able to successfully recover only a portion of the transferred funds. *Id.*

The company filed suit against the bank asserting, among other claims, that the bank violated Article 4A of the UCC. *Id.* at 206. The district court granted the bank's motion for summary judgment and dismissed the UCC claim; the First Circuit reversed. The First Circuit considered whether the bank could satisfy the requirements of Section 202(2) of Article 4A of the UCC, thereby shifting the risk of loss from the bank to the company. *Id.* at 208. The court's analysis focused on the commercial reasonableness of the bank's security measures. *See id.* at 208–10. Section 202(1) was not at issue.

Harborview's reliance on *Patco* ignores critical factual differences. In *Patco*, the third parties gained access to the *bank's* system and were able to transfer money directly from the company's bank account. The fraudulent transactions involved only the third parties and the bank; the authorized signatory of the company's bank account was not involved. Therefore, Section 202(1) was not at issue because the transfer was not authorized in the first place; the third parties had no authority to act on behalf of the company. The bank's alternative option to avoid liability was therefore to rely on Section 202(2).

Here, the third parties infiltrated the *company's* (Harborview's) system and interacted with the authorized signatory of the company's bank account (Ms. Tirado). Ms. Tirado, as authorized signatory, then sent a wire transfer form to the bank (Cross River). The wire transfer form was signed by Ms. Tirado, and Cross River contacted Ms. Tirado to confirm that she had authorized the wire transfer. Sadly, Ms. Tirado had been duped by others, but nevertheless, she was the authorized signatory. Therefore, this case falls under Section 202(1). Having already found that Cross River satisfied Section 202(1), I do not need to consider whether it also satisfied Section 202(2), and *Patco* is inapplicable.

### B. Reconsideration of Dismissed Common Law Claims

Harborview also asks me to reconsider my dismissal of its common law claims of negligent misrepresentation, breach of contract, and promissory estoppel. In my opinion, I relied on *ADS*, wherein the New Jersey Supreme Court held that "Article 4A comprehensively governs the rights and remedies of parties affected by funds transfers" and preempted any common law negligence claim arising "from a setting directly addressed by Article 4A." *ADS*, 99 A.3d at 359; *see also DeFazio v. Wells Fargo Bank Nat'l Ass'n*, No. CV 20-375 (SRC), 2020 WL 1888252, at *3 (D.N.J. Apr. 16, 2020). I reviewed the factual circumstances giving rise to each of Harborview's common law claims and determined that the circumstances involved subject matter covered by Article 4A. Therefore, guided by *ADS*, I held that Harborview's common law claims were preempted by Article 4A. *Op.*, 2022 WL 1224960, at *9–*10.

Harborview asserts that I incorrectly relied on *ADS* because it involved a non-customer of the bank, whereas Harborview was a customer of Cross River. Cross River cited to *ADS* in its brief supporting its motion to dismiss when arguing that Article 4A of New Jersey's UCC displaced Harborview's common law claims. (DE 21-1 pp. 29–30.) Harborview did not attempt to distinguish *ADS* in its brief opposing Cross River's motion to dismiss, (*see generally* DE 26), and it is not appropriate to do so now on motion for reconsideration, *see Red Roof Franchising*, 937 F. Supp. 2d at 543 (A motion for reconsideration is not "an opportunity for a litigant to raise new arguments or present evidence that could have been raised prior to the initial judgment.").

Instead of relying on *ADS,* Harborview asks that I rely on three cases decided before Harborview initiated this action: *New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.*, 690 F.2d 339 (3d Cir. 1982); *Yahn & McDonnell, Inc. v. Farmers Bank of Delaware*, 708 F.2d 104 (3d Cir. 1983); and *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773 (E.D. Pa. 2008). Harborview does not explain why it omitted its arguments

related to those cases from its brief in opposition to Cross River's motion to dismiss.

At any rate, I find that those cases would not affect my analysis. *New Jersey Bank* addressed claims arising under Article 8 of the UCC: "We see no basis for interpreting section 8-202(3) to preempt [Plaintiff's] action for damages caused by negligent handling of the securities. *Recognizing a remedy in tort furthers the policy of Article 8*: it promotes the negotiability of securities by placing the risk of loss on the party most able to minimize that risk." 690 F.2d at 347 (emphasis added). Similarly, *Yahn & McDonnell, Inc.* involved claims arising under Article 3 of the UCC, which required the court to consider whether the plaintiff was a "holder in due course" of a negotiable instrument, a matter not at issue in this case: "[S]ince an action in negligence is separate and distinct from any claim based on the instrument or the underlying contract, *we do not believe that the allocation of rights created by the holder in due course doctrine presents such a comprehensive remedial scheme as to supplant a negligence action.*" 708 F.2d at 113 (emphasis added).

In contrast, in *ADS*, the New Jersey Supreme Court recognized that Article 4A does indeed "comprehensively govern[] the rights and remedies of parties affected by funds transfers." 99 A.3d at 359. Therefore, the *ADS* Court concluded that Article 4A preempts common law negligence claims arising "from a setting directly addressed by Article 4A." *Id.* Guided by the New Jersey Supreme Court's preemption principles specific to Article 4A, I held that Harborview's common law claims were similarly preempted. *Op.*, 2022 WL 1224960, at *9–*10. I find no reason to alter my conclusion based on decisions addressing other articles of the UCC not at issue in this case.

*Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773 (E.D. Pa. 2008) is also inapplicable. The *Bucci* holding, on which Harborview relies, is highly specific to the facts of that case. There, the defendant "failed to fully develop its

displacement argument as to [plaintiff's] common law claims" and, therefore, the court could not hold that those claims were displaced by Pennsylvania's version of the UCC. 591 F. Supp. 2d at 781. As discussed in my prior opinion, based on the record and the New Jersey Supreme Court's decision in *ADS*, I held that Cross River had successfully developed its legal argument that Harborview's common law claims were preempted by Article 4A. *Op.*, 2022 WL 1224960, at *9–*10. *Bucci* does not affect my conclusion.

## IV.  CONCLUSION

For the reasons set forth above, I will **DENY** Harborview's motion for reconsideration. Harborview may file its motion for leave to amend the complaint, if any, within 14 days of the date of this opinion. An appropriate order follows.

Dated: November 14, 2022

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

11