UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HARBORVIEW CAPITAL PARTNERS, LLC,**<br><br> Plaintiff,<br><br> v.<br><br>**CROSS RIVER BANK,**<br><br> Defendant. | Civ. No. 21-15146 (KM) (ESK)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

 Harborview deposited funds at Cross River. A hacker took control of the email account belonging to the CEO of Harborview and directed an employee to wire money to an account in Hong Kong. The employee, believing she was acting on the instructions of her CEO, directed Cross River to transfer the money to the Hong Kong account. Cross River discovered the fraud, but too late to recover Harborview's funds. Harborview then sued Cross River. I granted Cross River's motion to dismiss without prejudice, and Harborview filed an amended complaint.

 In response, Cross River bypassed the motion to dismiss stage; instead, attaching additional evidence obtained thus far in discovery, and citing purported admissions in the now-superseded initial complaint, it has moved for summary judgment. Meanwhile, the Magistrate Judge has granted Cross River's motion to stay discovery. Harborview, in response, argues that summary judgment is premature because discovery is not complete, and has filed a declaration outlining the additional discovery it needs to respond to Cross River's motion. For the following reasons, Cross River's motion for summary judgment is administratively terminated without prejudice, and Harborview's application for additional discovery is **GRANTED**.

I. **BACKGROUND**[1]

Harborview is a Delaware limited liability company and Cross River is a New Jersey banking corporation. (FAC ¶¶ 1–2.) A detailed factual background regarding the Harborview lawsuit against Cross River can be found in my prior opinions granting Cross River's motion to dismiss (DE 44) and denying Harborview's motion for reconsideration (DE 64). For ease of reference, I summarize that background and provide detail on procedural developments that have occurred in the interim.

Harborview initially filed a complaint in August 2021, with claims for violation of N.J.S.A. § 12A:4A-202, negligent misrepresentation, breach of contract, and promissory estoppel. (Compl. ¶¶ 86–130.) The complaint alleged that the email of Harborview CEO Ephraim Kutner was hacked, that the hacker directed an accounting manager to wire $1.795 million to a Hong Kong bank, that the accounting manager completed the necessary wire transfer forms, and that Cross River received the forms, contacted the accounting manager for confirmation, and then transferred $1.375 million. (*Id.* ¶¶ 26–28,

---

[1] Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1)

FAC = First Amended Complaint (DE 75)

DSUMF = Cross River's Statement of Undisputed and Material Facts (DE 78-2)

PSUMF = Harborview's Statement of Undisputed and Material Facts (DE 87-1)

Gelbard Cert. Exs. A – D = Arlen W. Gelbard's Certification in Support of the Motion for Summary Judgment (DE 78-3), Exhibits A – D (DE 78-4 – 78-7)

Pearlson Decl. = A. Ross Pearlson's Declaration Pursuant to Fed. R. Civ. P. 56(d) (DE 87-3)

Br. = Cross River's Brief in Support of the Motion for Summary Judgment (DE 78-1)

Opp. = Harborview's Opposition to the Motion for Summary Judgment (DE 87)

Reply = Cross River's Reply in Support of the Motion for Summary Judgment (DE 88)

30–34.)² Harborview suggested that it only opened accounts at the bank because Cross River President Gilles Gade requested the deposits, Kutner maintained a social relationship with Gade, and Cross River assured Harborview that the funds would be safe. (*Id.* ¶¶ 6–11.) According to Harborview, Cross River was aware that its business activity was domestic in nature, both because the account opening data entry forms indicated no foreign wire activity, transfers, or business, and because the prior wire transfers were all successfully directed at domestic beneficiaries, rather than foreign entities. (*Id.* ¶¶ 12–19, 22–25.)³ Harborview alleged that it relied on these past practices and instructions, but that Cross River still proceeded to transmit its money overseas to unfamiliar accounts. (*Id.* ¶¶ 20, 36, 50–57.) Harborview asserted that the loss would not have occurred if Cross River had promptly raised the issue, investigated the matter, or retrieved the money, or if Cross River had contacted Harborview's CEO or Managing Director for confirmation. (*Id.* ¶¶ 38–49, 58–64, 81–85.)⁴ Harborview also asserted that, in allowing the loss to occur, Cross River failed to follow commercially reasonable banking practices or security measures. (*Id.* ¶¶ 21, 65–66, 70–80.)

In April 2022, I granted Cross River's motion to dismiss. (DE 44.) For purposes of the motion, I accepted as true that Harborview's data entry forms indicated no foreign wire activity, transfers, or business, and that its prior wire transfers were all directed at domestic beneficiaries. (*Id.* at 2.) However, I concluded that Cross River's overseas transactions were authorized pursuant to N.J.S.A. § 12A:4A 202(1) because the accounting manager who signed the

---

² Harborview alleged that $1.375 million of the $1.795 million was transmitted because $420,000 did not properly process. (Compl. ¶ 37.)

³ According to Harborview, the account opening data entry forms even listed "USA" as the "Trade Area." (*Id.* ¶¶ 16, 18.)

⁴ Harborview asserted that senior management should have been contacted for confirmation, not only because of past practices and instructions, but also because CEO fraud was common and Kutner was known to travel frequently. (*Id.* ¶¶ 29, 35, 60–63, 67–69.)

wire transfer forms and provided confirmed was an authorized signatory on the account. (*Id.* at 11–12.) Since authorization was provided, I found that the commercial reasonableness of Cross River's procedures under N.J.S.A. § 12A:4A 202(2) did not need to be examined, and that Harborview's common law claims were preempted. (*Id.* at 15, 17.) Nevertheless, I wrote that the N.J.S.A. § 12A:4A 202 claim "might have a chance of succeeding if Cross River was not entitled to rely on the instructions of Harborview's Account Manager." (*Id.* at 12.)

In November 2022, I denied Harborview's motion for reconsideration. (DE 64.) In deciding the motion, I considered the argument that the accounting manager was not authorized to approve Cross River's foreign wire transfers because Harborview's past practices and instructions anticipated only domestic transactions. (*Id.* at 5–6.) I also considered the argument that Cross River should not have heeded the accounting manager in light of the past practices and instructions. (*Id.* at 6.) Despite these arguments, I concluded that I had already considered the relevant facts, and that mere disagreement with my opinion did not warrant a different outcome. (*Id.* at 6–7.) Likewise, I maintained the opinion that commercial reasonableness did not need to be examined and that common law claims were preempted. (*Id.* at 7–11.)

Harborview ultimately filed an amended complaint in February 2023, without any common law claims. (FAC ¶¶ 120–39.) The amended complaint contained new allegations, including ones that Gade was personally aware of Harborview's lack of foreign business and Kutner's extensive travel, and that "Gade communicated both with Kutner and internally with Cross River personnel about Harborview setting up its accounts at Cross River, and was involved in getting the accounts established at the Bank." (*Id.* ¶¶ 12–13, 41–42.) According to Harborview, Gade supervised the set-up of the accounts, negotiating interest rates, offering overdraft protections, and working closely with Cross River branch manager Tina Rubino to establish the accounts. (*Id.* ¶¶ 26–28, 30–32.) Harborview also alleged that communications between the

4

companies were primarily and routinely conducted directly between Gade and Kutner, and that Gade personally assured Kutner of Cross River's ability to keep the accounts safe and Cross River's intent to make top people accessible to Harborview. (*Id.* ¶¶ 16–17, 20–21.) Furthermore, Harborview asserted that authorized signatories on the accounts were only authorized for domestic wire transfers, that Cross River was aware foreign wire transfers should not occur, and that this expectation was reflected in Cross River's system to ensure transactions aligned with Harborview's preferences. (*Id.* ¶¶ 43, 46–49, 53, 64, 71.) Therefore, Harborview asserted that "[b]ased on information Cross River solicited from Harborview as well as Gade's and Cross River's ongoing communications with the Kutners and Harborview, Cross River knew or should have known that a transfer of funds to a foreign entity was not authorized, and could not be authorized by administrative staff." (*Id.* at 72.) The amended complaint contained new allegations regarding the commercial unreasonableness of Cross River's security procedures as well. (*See, e.g.*, *id.* ¶¶ 68–69.)

      On March 16, 2023, Cross River filed a motion for summary judgment (DE 78), along with a brief in support (Br.). Cross River notified the Court that the motion was essentially an "application to dismiss Plaintiff's claims," but that it "was forced to file the application as one for summary judgment" to present evidence that would preclude Harborview from disputing the title of the employee who sent the wire transfer forms. (DE 81 at 1–2.)[5] On May 1, 2023, Harborview filed an opposition (Opp.), along with a declaration requesting additional discovery to present facts essential to justify its opposition (Pearson Decl.). On May 8, 2023, Cross River filed a reply. (Reply.) On September 12, 2023, the Magistrate Judge granted Cross River's request to stay discovery for the pendency of the summary judgment motion. (DE 96.)

---

[5]    According to Cross River, Harborview "admitted" that the employee was an accounting manager in the initial complaint, only to back away from that admission in the amended complaint. (DE 81 at 1–2.)

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat summary judgment, the opposing party must point to evidence that creates a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if—taken as true—it would affect the outcome of the case under governing law. And a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *M.S. by and through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citations omitted).

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The nonmovant may request discovery under Rule 56(d) "by simply attaching an appropriate affidavit or declaration to that party's response to a motion for summary judgment," as "a formal motion is not required to request discovery." *Shelton v. Bledsoe*, 775 F.3d 554, 567–68 (3d Cir. 2015).

## III. DISCUSSION

The following facts are undisputed.[6] In January 2018, Harborview completed a data entry form to open an account at Cross River. (DSUMF ¶ 5.) The form indicated that no business of a foreign nature was conducted at Harborview, that no foreign wire activity or volume was anticipated, that the "Trade Area" of the company was the "USA," and that Kutner and Marilyn

---

[6] I treat a fact as undisputed if it is admitted in Harborview's Response to the DSUMF (*see* DE 87-2), supported by the evidence cited in the PSUMF (*see* DE 87-5), or demonstrated by "other materials in the record," Fed. R. Civ. P. 56(c)(3). Citations to the DSMUF and PSUMF incorporate the evidence cited therein.

Tirado were authorized signatories for the account (Gelbard Cert. Ex. C.)[7] At least one other data entry form submitted to Cross River also indicated that Harborview did not conduct foreign transactions. (PSUMF ¶ 1.) However, in August 2018, a hacker took control of Kutner's email and directed Tirado to transmit Harborview funds overseas. (DSUMF ¶¶ 7, 9.) Tirado then sent emails to Cross River on behalf of Harborview with four wire transfer forms. (Gelbard Cert. Ex. D.) Upon receiving the forms, which were signed by Tirado and Kutner, Cross River contacted Tirado for verbal confirmation and processed the transactions. (DSUMF ¶¶ 12, 14–15.) Kutner attests, not only that Gade personally assured him Harborview's money would be safe with Cross River, but also that Tirado's authorization did not extend beyond domestic wire transfers. (PSUMF ¶¶ 4–6.)

Nevertheless, the parties dispute whether Tirado's authorization did, in fact, extend to foreign transactions pursuant to N.J.S.A. § 12A:4A 202(1). (Br. at 10–14; Opp. at 17–18.)[8] The parties also contest the appropriateness of adjudicating the motion for summary judgment; Harborview contends that summary judgment is premature because it cannot present facts essential to justify its opposition (Opp. at 11–12), while Cross River disagrees (Reply at 13–16). Since "it is improper for a district court to rule on summary judgment without first ruling on a pending Rule 56[(d)] motion," *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (citations omitted), I will convert the motion for summary judgment into a Rule 56(d) motion for discovery.

By declaration, Harborview attests that Cross River's motion for summary judgment is premature because "discovery is needed to establish

---

[7]   Tirado was listed as "SR ACCT" in an opening data form package submitted to Cross River, and she declared under penalty of perjury in another matter that she was a "senior accountant." (DSUMF ¶¶ 20–21.) The anticipated dispute about Tirado's job title appears to have not materialized. (DE 87-2 ¶¶ 20–21.)

[8]   So too, the parties dispute whether Cross River's security procedures were commercially reasonable under N.J.S.A. § 12A:4A 202(2). (Br. at 14–17; Opp. at 18–22; Reply at 11–13; DSUMF ¶ 22; PSUMF ¶¶ 2–3, 10–12.)

7

whether Defendant was entitled to rely on the signatory's alleged authorization for a foreign wire transfer." (Pearlson Decl. ¶ 2.) In order to dispute Tirado's authority to authorize foreign wire transfers, Harborview attests that it needs discovery to explore the following: when and how Cross River inputted information from data entry forms; whether processes, procedures, and coding were instituted to prevent or scrutinize overseas or Hong Kong transactions; and whether Cross River discussed the domestic-foreign distinction with Harborview or reviewed its past practices or instructions. (*Id.* ¶ 13.) Harborview also attests that it needs discovery to probe the communications between Gade, Kutner, Rubino, and others, as well as the extent of Gade's involvement in opening the accounts, in order to assess Cross River's knowledge that only domestic transactions were permitted. (*Id.* ¶ 11.)

    I find that Harborview's requested discovery could present facts essential to justify its opposition to the motion for summary judgment. Much of the thrust of Harborview's argument seems to be that Cross River possessed knowledge that disentitled it to rely on the legitimacy of the wire transfer order. Based on the current record, the wire transfer forms received by Cross River were the authorized orders of Harborview because they were signed, imparted, and confirmed by Tirado, who was an authorized signatory for the account. Account opening data entry forms and company custom may have notified Cross River that Harborview avoided foreign transactions, but I already considered these facts and concluded that the wire transfers were, on their face, authorized. However, Harborview might still develop the record to show, not only that Cross River was aware of general expectations regarding foreign transactions, but also that Cross River was in receipt of a specific directive limiting Tirado's authorization to domestic transactions. Indeed, discovery of Cross River's gathering, processing, discussion, and review of Harborview's past practices and instructions might uncover the existence of such a directive, as might discovery of Gade's communications and involvement.

    In all frankness, it must be said that Cross River has presented arguments and evidence which, if presented after adequate discovery, might be

deemed persuasive. Nevertheless, Cross River has presented its motion as one for summary judgment, at a time when discovery is far from complete. Harborview is entitled to sufficient discovery and an opportunity to probe that evidence in advance of any grant of summary judgment. Accordingly, I will grant the request for additional discovery under the supervision of the Magistrate Judge, who will ensure that such discovery is limited to the issues that remain concerning the authority of Harborview's employee, the scope of Cross River's knowledge regarding that authority, and the commercial reasonableness of its procedures to verify the authenticity of the wire transfer.

## IV.   CONCLUSION

For the reasons set forth above, Cross River's motion for summary judgment is administratively terminated without prejudice to renewal after suitable discovery under the supervision of the Magistrate Judge. Harborview's application for additional discovery is **GRANTED**. A separate order will issue.
Dated: October 11, 2023

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**

9