★ORDER★



**CHIESA SHAHINIAN & GIANTOMASI PC**

105 Eisenhower Parkway, Roseland, NJ 07068
csglaw.com

**A. ROSS PEARLSON**
Member

rpearlson@csglaw.com

O  973.530.2100      F  973.325.1501

May 13, 2024

*Via ECF*

Hon. James B. Clark, III, U.S.M.J.
United States District Court, District of New Jersey
Martin Luther King Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re:   **Harborview Capital Partners LLC v. Cross River Bank**
      **Civil Action No. 21-cv-15146-EP-JBC**

Dear Judge Clark:

    This firm, along with the firm Frankel, Rubin, Klein, Payne, & Pudlowski, P.C., represents Plaintiff Harborview Capital Partners ("Harborview") in the above-referenced matter. This letter is respectfully submitted pursuant to Local Civil Rule 37.1, Federal Rule of Civil Procedure 37, and Your Honor's judicial preferences, concerning a discovery issue that has arisen between the parties that we believe requires judicial intervention.

    By way of brief background, this action involves Harborview's claims against Defendant Cross River Bank ("Cross River") resulting from four suspicious international wire transfers processed by Cross River from Harborview's account, which were authorized as the result of a phishing scam perpetrated upon one of Harborview's employees. Cross River has consistently maintained during this litigation that its policies are industry standard and that it adhered to every one of its policies in connection with the release of the wires. However, discovery and depositions to date have shown that, contrary to Cross River's assertions, Cross River's transgressions with respect to its own policies run deep. Specifically, Cross River has failed to strictly adhere to two of its own policies: Its "Know Your Customer" Policy and its Department of Treasury Office of Foreign Asset Control Policy. If Cross River implemented or adhered to either of these policies, the suspicious wires transferred from Harborview's account would never have gone through. Notwithstanding their direct relevance to Harborview's claims, Cross River has refused to provide documents relating to its compliance (or non-compliance) with such policies. As a result, Harborview respectfully seeks leave to file a motion to compel such documents.

NEW JERSEY       NEW YORK

4874-6937-5422

Hon. James B. Clark, III, U.S.M.J.
May 13, 2024
Page 2

*The Parties' Present Discovery Dispute*

Discovery in this action has been a difficult and contentious process, not least of which because Cross River has repeatedly stonewalled Harborview's efforts to obtain relevant discovery, including discovery relating to the above-referenced policies. The current discovery dispute between the parties relates to documents identified during the Rule 30(b)(6) deposition of Cross River and the deposition of two fact witnesses from Cross River (conducted on February 22, 2024 and February 28, 2024 respectively), documents which were unquestionably responsive to requests Harborview served on Cross River *two years ago* but which Cross River never produced. Following each of the depositions, Harborview's counsel identified relevant documents referenced during the depositions, but which had not been previously produced, and requested that Cross River remedy these deficiencies by supplementing its document production to include such documents. (*See* Ex. A).

On March 18, 2024, Cross River responded to each of Harborview's identified deficiencies as if they were original requests and improperly provided new objections to each request. (*See* Ex. B). Although Cross River did provide a limited supplemental document production, the produced documents were unquestionably responsive to Harborview's initial requests, should have been produced prior to Harborview's depositions of Cross River's personnel, and were undoubtedly intentionally withheld. Further, a review of Cross River's supplemental document production disclosed a number of outstanding deficiencies, which Harborview identified by way of letter to Cross River's counsel dated May 2, 2024 (the "May 2 Letter"). (*See* Ex. C). Specifically, the May 2 Letter advised Cross River that its objections to Harborview's deficiency requests were improper, and demanded that Cross River identify any documents that have been withheld on the basis of these objections. In addition, the May 2 Letter also identified categories of documents that still appeared to be missing from Cross River's production, including internal training and procedure documents, certain memo notes, information relating to the date certain procedures became effective, and certain documents relating to Cross River's compliance with its own policies. (*See* Ex. C).

Harborview's May 2 Letter to Cross River requested that, by May 8, 2024, Cross River either withdraw its objections to Harborview's requests or hold a subsequent meet and confer with Harborview. (*Id.*). ***Cross River has failed to even provide a response or acknowledgment of this letter.*** Cross River's failure to respond or provide the information that Harborview has requested is improper, as the requested information is integral to Harborview's claims in this action. As stated above, it is Harborview's position in this action that Cross River lacks appropriate internal controls and has failed to strictly adhere to two of its own policies: Its "Know Your Customer" Policy and its Department of Treasury Office of Foreign Asset Control Policy. As information and documents relating to these policies are unquestionably relevant to the claims and defenses asserted in this action, Harborview is entitled to the discovery it has requested regarding such policies.

Hon. James B. Clark, III, U.S.M.J.
May 13, 2024
Page 3

*The Documents and Information Harborview Requested From Cross River Seeks Information Relating to These Policies*

A "Know Your Customer Policy" (KYC) is an industry-standard policy of Cross River and others in which a financial institution such as Cross River has an affirmative duty and responsibility to understand the business patterns and practices of its clients so that it can identify a deviation. A KYC policy places an affirmative duty on a bank to know its customers and review and restrict actions. Cross River's Rule 30(b)(6) representative expressly admitted in her deposition that the four wires in this matter constitute what Cross River itself defines as a "suspicious wire" under its KYC policy that should have been flagged. (*See* Exhibit D[1] (Rule 30(b)(6) Deposition of Kathy Nelson, 146:10-22; 147: 20-25; 148: 6-10)). It is also clear that each and every Cross River employee had access to the documents that state Harborview does not send international business wires. (*See* Exhibit D (Deposition of Suellen Gomero 29:6-16)). Nonetheless, Cross River allowed not one, not two, not three, but *four* suspicious wires to go through without being challenged. According to Cross River's policies and practices, when suspicious activity on an account is flagged, its agents are supposed to exercise the "heightened due diligence" required by its own policy. (*See* Exhibit D (Deposition of Anna Kim 68: 16-24)). This did not happen, or at the very least, this is the information that is being withheld at this point from Harborview. Accordingly, Harborview should be permitted to file a motion to compel. Whether Cross River followed its own safety and security policies is at the very heart of this matter, directly implicating whether indeed the procedures of Cross River were commercially reasonable, whether Cross River followed its own procedures negating any implication of authorization, and whether Cross River's reliance on the authorizations excuses Cross River from following its procedures even if they were commercially reasonable.

The Office of Foreign Asset Control (OFAC) Policy is a policy that is somewhat related to KYC. Whereas under a KYC policy, it is a bank's responsibility to flag internal concerns from its own customers, OFAC is a regulatory body tasked with governing a bank's adherence to federal anti-terrorism laws and making sure money does not go to inappropriate actors abroad. At a very high level, when a domestic entity initiates a foreign wire, the recipient and recipient Bank of that wire have their names checked against a master list of potential "bad actors." It is uncontested in this matter that all four of the suspicious wires were flagged by OFAC as potentially illegitimate, non-allowable transfers prior to their release. When that occurs, Cross River has the option to either stop the transfer or code the OFAC hit as a "false positive." Each and every one of the wires at issue here was flagged by Cross River as a "false positive" but nonetheless sent by Cross River—four times in less than a month. Ultimately, Cross River was responsible for releasing the suspicious wires. (*See* Exhibit D (Rule 30(b)(6) Deposition of Kathy Nelson, 138:16-20)). Had Cross River followed its own internal policies related to what it should have done when an OFAC positive came through, it is likely that at least three, if not all four, of the suspicious wires would have been stopped. Regardless of Harborview

---

[1] Pursuant to Local Civil Rule 37.1, only the relevant pages of deposition testimony have been attached hereto, but Harborview can provide the Court with complete transcripts should the Court so request.

Hon. James B. Clark, III, U.S.M.J.
May 13, 2024
Page 4

being victimized or "authorizing the wires," a bank with an appropriate OFAC review policy, or at least a bank willing to follow its own policy, would not have allowed these transfers to go through. As set forth in the May 2 Letter, Harborview is seeking further discovery related to both the internal notes and memorandum of Cross River about the determinations of these wires as "false positives" as well as what, if anything, Cross River did in response to both the "false positives" and the subsequent information that the money had indeed gone to bad actors.

While Cross River has consistently stated that it has the highest standards for safety and security (*see, e.g.,* Exhibit D (Deposition of Gilles Gade 31:4-15)), it purports to rely on this language in producing the bare minimum discovery, arguing that, because of Harborview's signature, there is no need to look at these policies. Internal emails and memoranda have not been produced. The policies that have been produced show that there are further policies being withheld by Cross River or other documents available that should have been produced, and in fact, show that Cross River has been failing to meet its own requirements for documentation. Cross River's reliance that it has strict policies in place has already been seen to be factually inaccurate in this matter as well as consistently held by the FDIC on multiple independent audits of Cross River. While not specifically related to their wire room policies, as recently as 2023 the FDIC found that Cross River has engaged in "unsafe or unsound banking practices" and failed to "maintain internal controls" related to other of its practices. (*See* Exhibit E, FDIC Consent Order, March 2023, FDIC-22-0040b).[2] While Harborview has no position or knowledge as to the depth of the FDIC concerns that led to this Consent Order, those concerns are certainly emblematic of the lack of adherence of Cross River to both federal regulations and internal policies. Had Cross River maintained the "highest standard" as its CEO Gilles Gade contended during his unfinished deposition (*see, e.g.,* Exhibit D (Deposition of Gilles Gade 31:4-15)), Cross River would not have lost Harborview's money nor would it have had such significant issues with the FDIC. It is these internal controls and oversight of its policies and vendors as to which Harborview is seeking to obtain information, but which Cross River has blocked from discovery either through direct objection or indirect obfuscation.

*Conclusion*

For the reasons stated above, Harborview respectfully requests that the Court grant leave to file a motion to compel to (1) require the production of withheld documents and/or (2) issue a sanction barring Cross River from producing or presenting evidence at a later time to contradict the negative inference resulting from the lack of production now. As Your Honor will see, should Harborview be allowed to fully brief the matter, the omissions and failures to produce by Cross River at this stage relate to the very heart of the matter.

[Handwritten annotation bracketing the Conclusion paragraph: "Denied without prejudice"]

---

[2] This order is also publicly available at:
https://orders.fdic.gov/sfc/servlet.shepherd/document/download/0693d000007xEStAAM?operation
Context=S1

SO ORDERED
s/James B. Clark
James B. Clark, U.S.M.J.
Date: 5/14/2024

[Handwritten: * Defendant shall file a responsive letter by May 17, 2024.]